# UNITED STATES DISTRICT COURT
for the

Eastern District of California

<table>
<tr><td>

In the Matter of the Search of

(1) A black Samsung Cell Phone; (2) a Blue
Samsung Cell Phone; and (3) a White Apple
iPhone, Currently Located at 5770 Freeport
Boulevard, Suite 200, Digital Forensics Unit,
Sacramento, California

</td><td>)<br>)<br>)<br>)<br>)<br>)<br>)</td><td>

Case No.

2:26-sw-0599 JDP

</td></tr>
</table>

**FILED**

**Jul 07, 2026**

CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

**SEE ATTACHMENT A, attached hereto and incorporated by reference.**

located in the _____Eastern_____ District of _____California_____ , there is now concealed *(identify the person or describe the property to be seized)*:

**SEE ATTACHMENT B, attached hereto and incorporated by reference**

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

- ☑ evidence of a crime;
- ☐ contraband, fruits of crime, or other items illegally possessed;
- ☐ property designed for use, intended for use, or used in committing a crime;
- ☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| *Code Section* | *Offense Description* |
|---|---|
| 21 U.S.C. § 841(a)(1) | Possession with Intent to Distribute Controlled Substances |

The application is based on these facts:

**SEE AFFIDAVIT, attached hereto and incorporated by reference.**

- ☑ Continued on the attached sheet.
- ☐ Delayed notice _____ days (give exact ending date if more than 30 days: _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

/s/ Andrew Cunningham
*Applicant's signature*

Andrew Cunningham, DEA TFO
*Printed name and title*

Sworn to before me and signed in my presence.

Date: July 7, 2026

City and state: Sacramento, California

*Judge's signature*

Jeremy D. Peterson, U.S. Magistrate Judge
*Printed name and title*

ERIC GRANT
United States Attorney
ERIN CORNELL
Assistant United States Attorney
501 I Street, Suite 10-100
Sacramento, CA 95814
Telephone: (916) 554-2700
Facsimile: (916) 554-2900

Attorneys for Plaintiff
United States of America

## IN THE UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In the Matter of the Search of:<br><br>(1) a black Samsung Cell Phone; (2) a Blue Samsung Cell Phone; and (3) a White Apple iPhone, Currently Located at 5770 Freeport Boulevard, Suite 200, Digital Forensics Unit, Sacramento, California. | CASE NO.<br><br>AFFIDAVIT IN SUPPORT OF AN APPLICATION UNDER RULE 41 FOR WARRANTS TO SEARCH DEVICES |

I, Andrew Cunningham, being first duly sworn, hereby depose and state as follows:

### I.      INTRODUCTION AND AGENT BACKGROUND

1.      I make this affidavit in support of an application under Rule 41 of the Federal Rules of Criminal Procedure for search warrants authorizing the examination of property—three electronic devices—which is currently in law enforcement possession, and the extraction from that property of electronically stored information described in Attachment B.

2.      I am a Task Force Officer (TFO) with the Drug Enforcement Administration (DEA) and have been since July of 2023. I am currently assigned to the Sacramento Division Task Force Group (TFG), where I am charged with investigating numerous crimes, including Drug Trafficking Organizations (DTOs) in the Eastern District of California and elsewhere.

3.      As a DEA TFO, I am authorized to investigate violations of laws of the United States and to execute warrants issued under the authority of the United States. I have assisted in the execution of search warrants for controlled substances and/or related paraphernalia, indicia, and other evidence of

AFFIDAVIT                                               1

violations of federal drug statutes. I have participated in investigations targeting individuals and organizations trafficking cocaine, heroin, fentanyl and methamphetamine. During my career as a Sacramento Police Department Officer and DEA TFO, I have participated in at least 100 drug and/or gang investigations.

4.     I am a Detective with the Sacramento Police Department and have been employed with the Sacramento Police Department (SPD) since June 2017. I graduated from the SPD Academy in 2017. During my tenure with SPD, I worked Patrol for three (3) years, on SPD's Marijuana Compliance Team for eight months, SPD's South Gang Enforcement Team (SGET) for three (3) years and since July 2023, I have been assigned to SPD's Special Investigations Unit (SIU) and cross-designated as a TFO with DEA. My current duties include investigations into DTOs and criminal street gang members.

5.     I am an investigative or law enforcement officer of the United States within the meaning of 18 U.S.C. § 2510(7). I am authorized pursuant to Federal Rule of Criminal Procedure Rule 41(a)(2)(C) to request a search warrant. I have been a sworn peace officer in the State of California since June 2017. I have been a TFO with the DEA and a Sworn Special Deputy United States Marshal since July 2023. During my years as an DEA TFO, I have investigated violations of both federal and state laws pertaining to drug trafficking. During those investigations I have become familiar with the means in which drug traffickers obtain and distribute drugs. During my years as a sworn peace officer, I have investigated no less than one-hundred individuals for possession and/or distribution of drugs. I have been qualified as an expert in possession of drugs for sale multiple times in the State of California, County of Sacramento Superior Court. I have received no less than one hundred hours of training specifically related to drugs.

6.     Through my training and experience, I know that narcotics traffickers use mobile telephones to communicate with one another, either by voice or text message. Additionally, drug traffickers use multiple telephones to facilitate the different aspects of negotiations and coordination of drug trafficking.

7.     The facts and information set forth herein are based upon my personal knowledge and observations, observations of other law enforcement personnel, observations of cooperating individuals as related to me and other law enforcement personnel, my review of investigative reports, and

AFFIDAVIT

2

discussions with other federal, state, and local law enforcement officials. Where I describe statements made by other people (including other agents and law enforcement officers), the statements are described in sum, substance, and relevant part. Similarly, where I describe information contained in reports and other documents or records in this affidavit, this information is also described in sum, substance, and relevant part.

8.      This affidavit is intended to show only that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

## II.      IDENTIFICATION OF THE DEVICE TO BE EXAMINED

4.      The property to be searched is

    a)      a black Samsung cell phone (**SUBJECT DEVICE #1**);

    b)      a blue Samsung cell phone (**SUBJECT DEVICE #2**); and

    c)      a white Apple iPhone (**SUBJECT DEVICE #3**).

**SUBJECT DEVICE #1**, **SUBJECT DEVICE #2**, and **SUBJECT DEVICE #3**, collectively referred to herein as "the **SUBJECT DEVICES**," were seized on June 10, 2026, at Julian **BEALL**'s apartment, located at 1721 21st Street, Apartment 225, Sacramento, California. The **SUBJECT DEVICES** are currently located at 5770 Freeport Boulevard, Suite 200, Digital Forensics Unit, Sacramento, California, within the Eastern District of California.

5.      The applied-for warrant would authorize the forensic examination of the **SUBJECT DEVICES** for the purpose of identifying electronically stored data particularly described in Attachment B.

## III.      PROBABLE CAUSE

9.      On June 10, 2026, in Sacramento County, California and the Eastern District of California, Julian BEALL was found in possession of approximately twenty-three (23) kilograms (51 pounds) of heroin and approximately ten (10) kilograms (22 pounds) of cocaine.

10.      In February 2026, I began investigating BEALL for narcotics distribution. During my investigation I learned that BEALL was living at 7040 Star Trail Way in Roseville, California. I also learned that BEALL had a secondary, "stash," location at 1714 21st Street, Apartment No. 225, in Sacramento, California. Based on my investigation, training, and experience, I believed that BEALL

AFFIDAVIT

3

likely stored contraband at 1714 21st Street, Apartment No. 225, in Sacramento.

11.    As part of my investigation, on June 9, 2026, I obtained warrants to search BEALL's Roseville residence, his secondary stash location at 1714 21st Street, Apartment No. 225 in Sacramento, his vehicle, and his person. The warrants were signed by the Honorable Matthew Gary, Judge of the Superior Court of the State of California, County of Sacramento.

12.    On June 10, 2026, detectives and officers with the SPD served both warrants. At approximately 12:06 p.m., BEALL arrived at 1714 21st Street, Apartment No. 225. SPD Officer Cato, in an undercover (UC) capacity, observed BEALL depart 1714 21st Street, Apartment No. 225 at approximately 12:54 p.m. BEALL was then detained and was found to be in possession of keys to 1714 21st Street, Apartment No. 225.

13.    SPD personnel then served the warrant at 1714 21st Street, Apartment No. 225. During the initial sweep, no one else was located inside the apartment. During the search of the apartment, SPD located approximately two (2) kilograms of cocaine in the kitchen, six (6) kilograms of heroin in a duffle bag in the hallway, seven (7) kilograms of cocaine in a dresser in the bedroom, seventeen (17) kilograms of heroin in a safe in the bedroom, and numerous sales indicia items, to include digital scales with cocaine residue, a heat sealer, empty plastic baggies, rubber gloves. Investigators also located **SUBJECT DEVICE #1 and SUBJECT DEVICE #2** on a couch inside the apartment. **SUBJECT DEVICE #3** was found on the ground near the couch inside the apartment. Law enforcement was able to get into the safe without breaking it open because BEALL told them there was paperwork in the kitchen that contained the code to the safe. BEALL's vehicle, a rented black Ford Escape bearing the CA license plate 9SGW118, was also searched and law enforcement located two (2) additional cell phones[1], BEALL's wallet, and an access pass to the parking garage at 1714 21st Street.

14.    On June 10, 2026, SPD personnel also served the warrant at 7040 Star Trail Way in Roseville. During the execution of this warrant, law enforcement located and seized $133,420 in cash.

15.    The heroin and cocaine seized from BEALL's apartment on 21st Street were sent to the Sacramento County Laboratory of Forensic Services for Analysis. A criminalist determined that the

---

[1] I am not seeking to search the two cell phones found in BEALL's vehicle because the electronic devices are not supported by the available extraction software.

AFFIDAVIT                                           4

heroin seized from BEALL's apartment was, in fact, heroin, and had a total weight of 23.58158 kilograms. A criminalist also determined that the cocaine seized from BEALL's apartment was, in fact, cocaine, and had a total weight of 10.2312 kilograms.

16.    I subsequently served an administrative subpoena at 1714 21st Street and learned that 1714 21st Street, Apartment No. 225 was leased to BEALL and no other people were listed as authorized tenants.

17.    The **SUBJECT DEVICES** are currently in the lawful possession of the Sacramento Police Department. They came into the Sacramento Police Department's possession in the following way: They were seized from BEALL's apartment located at 1714 21st Street Apartment No. 225 in Sacramento.

18.    The **SUBJECT DEVICES** are currently in storage at the SPD Digital Forensics Unit (DFU), 5770 Freeport Blvd Suite No. 200 Sacramento, within the Eastern District of California. In my training and experience, I know that the **SUBJECT DEVICES** have been stored in a manner in which their contents are, to the extent material to this investigation, in substantially the same state as they were when they first came into the possession of the Sacramento Police Department.

## IV.    TRAINING AND EXPERIENCE REGARDING CELLULAR DEVICES

19.    I know from my training, experience, and discussions with other experienced law enforcement officials that those who traffic narcotics frequently possess the following evidence of their unlawful activity on their electronic devices:

a)    Information concerning where and from whom the person purchased narcotics.

b)    Correspondence to and/or from actual or prospective sources or buyers;

c)    Records and/or documents of mailing, shipping, or delivery, whether by the United States Postal Service or other private delivery services;

d)    Photos of their narcotics and narcotics sales indicia.

e)    Written, recorded oral, or digital communications with associates involved in the purchase/sale of narcotics.

f)    Written statements showing profits made from the sale of narcotics.

AFFIDAVIT

5

20.    I know that those who traffic narcotics often use cellular telephones to communicate with one another, either by voice or text message. The information stored in a mobile telephone used by drug traffickers is evidence of the associations of the narcotics trafficker. Cellular telephones also contain in their memory text messages sent, received, and drafted by the mobile telephone user. The text message history of a cellular telephone can contain evidence of narcotics trafficking because it shows the communications or planned communications of a drug trafficker.

21.    Drug traffickers sometimes leave voice messages for each other, and this is evidence both of their mutual association and possibly their joint criminal activity. Cellular telephones can also contain other user-entered data files such as "to-do" lists, which can provide evidence of crime when used by drug trafficker. Cellular telephones can also contain photographic data files, which can be evidence of criminal activity when the user was trafficking drugs. Cellular telephone companies also store the data described in this paragraph on their own servers and associate the data with particular users' mobile telephones.

22.    Based on my training and experience, I know that people who possess significant quantities of narcotics often maintain photographs or videos of them, including photographs or videos of the narcotics.

23.    It has been my experience that people engaged in criminal activities utilize cellular telephones to maintain contact, either by telephone calls and/or text messaging, with close associates and people they trust, to include associates in the criminal activities, and that they carry these cellular telephones with them during the course of their criminal activities. Moreover, it has been my experience that people engaged in such criminal activities utilize these cellular telephones to take photographs and videos of themselves, their criminal associates, and other items related to their criminal activities, in some cases from the proceeds from their criminal activities. Relating to the ever-evolving level of cellular telephone technology, particularly increased storage capacity, through my training and experience, I know that cellular telephones can regularly store contacts, call logs, text messages, multimedia files, voicemail messages, and location/GPS data months and in some cases years from the date of the phone's activation.

AFFIDAVIT                                                6

24.     Based on my knowledge, training, and experience as a TFO for DEA, as well as conversations with other special agents and investigators from local, state, and federal law enforcement entities, I know that individuals who engage in criminal activity often use cellular phones as part of their criminal activity. This includes using telephones to arrange for the purchase or the sale of controlled substances. I know that people who negotiate the sale of contraband will often use cell phones to contact co-conspirators to obtain additional quantities of drugs. I also know that photos of drugs and/or currency are often stored on such devices and shared between co-conspirators. These communications often occur by voice calls, text messages, and communication apps such as Signal, WhatsApp and Telegram. These communications may also occur over social media apps such as Instagram and Facebook that are connected to the internet and can be accessed by use of a cell phone. These conversations often include pictures of narcotics, the price of the narcotics and the location to meet to conduct the drug deals.

25.     Based on my training and experience, I know that digital storage devices can maintain stored data for years and that data will not be destroyed unless it is deleted by the user or the device is physically compromised. In this case, the target cell phones have been in continuous law enforcement custody since the time they were seized. Therefore, based on my training and experience, the contents of these devices are in the same state as they were at the time their former users possessed them.

## V.     TECHNICAL TERMS

26.     Based on my training and experience, I use the following technical terms to convey the following meanings:

a)      Wireless telephone:  A wireless telephone (or mobile telephone, or cellular telephone) is a handheld wireless device used for voice and data communication through radio signals. These telephones send signals through networks of transmitter/receivers, enabling communication with other wireless telephones or traditional "land line" telephones. A wireless telephone usually contains a "call log," which records the telephone number, date, and time of calls made to and from the phone. In addition to enabling voice communications, wireless telephones offer a broad range of capabilities. These capabilities include: storing names and phone numbers in electronic "address books;" sending, receiving, and

AFFIDAVIT

7

storing text messages and e-mail; taking, sending, receiving, and storing still photographs and moving video; storing and playing back audio files; storing dates, appointments, and other information on personal calendars; and accessing and downloading information from the Internet. Wireless telephones may also include global positioning system ("GPS") technology for determining the location of the device.

b)  Digital camera:  A digital camera is a camera that records pictures as digital picture files, rather than by using photographic film. Digital cameras use a variety of fixed and removable storage media to store their recorded images. Images can usually be retrieved by connecting the camera to a computer or by connecting the removable storage medium to a separate reader. Removable storage media include various types of flash memory cards or miniature hard drives. Most digital cameras also include a screen for viewing the stored images. This storage media can contain any digital data, including data unrelated to photographs or videos.

c)  Portable media player:  A portable media player (or "MP3 Player" or iPod) is a handheld digital storage device designed primarily to store and play audio, video, or photographic files. However, a portable media player can also store other digital data. Some portable media players can use removable storage media. Removable storage media include various types of flash memory cards or miniature hard drives. This removable storage media can also store any digital data. Depending on the model, a portable media player may have the ability to store very large amounts of electronic data and may offer additional features such as a calendar, contact list, clock, or games.

d)  GPS:  A GPS navigation device uses the Global Positioning System to display its current location. It often contains records the locations where it has been. Some GPS navigation devices can give a user driving or walking directions to another location. These devices can contain records of the addresses or locations involved in such navigation. The Global Positioning System (generally abbreviated "GPS")

AFFIDAVIT

8

consists of 24 NAVSTAR satellites orbiting the Earth. Each satellite contains an extremely accurate clock. Each satellite repeatedly transmits by radio a mathematical representation of the current time, combined with a special sequence of numbers. These signals are sent by radio, using specifications that are publicly available. A GPS antenna on Earth can receive those signals. When a GPS antenna receives signals from at least four satellites, a computer connected to that antenna can mathematically calculate the antenna's latitude, longitude, and sometimes altitude with a high level of precision.

e)   PDA:  A personal digital assistant, or PDA, is a handheld electronic device used for storing data (such as names, addresses, appointments or notes) and utilizing computer programs. Some PDAs also function as wireless communication devices and are used to access the Internet and send and receive e-mail. PDAs usually include a memory card or other removable storage media for storing data and a keyboard and/or touch screen for entering data. Removable storage media include various types of flash memory cards or miniature hard drives. This removable storage media can store any digital data. Most PDAs run computer software, giving them many of the same capabilities as personal computers. For example, PDA users can work with word-processing documents, spreadsheets, and presentations. PDAs may also include global positioning system ("GPS") technology for determining the location of the device.

f)   Internet: The Internet is a global network of computers and other electronic devices that communicate with each other. Due to the structure of the Internet, connections between devices on the Internet often cross state and international borders, even when the devices communicating with each other are in the same state.

AFFIDAVIT

9

27.     Based on my training, experience, and research, I know that the **SUBJECT DEVICES** have capabilities that allow them to serve as a wireless telephone, digital camera, portable media player, GPS navigation device, and PDA. The **SUBJECT DEVICES** also have the capability to access the internet. In my training and experience, examining data stored on devices of this type can uncover, among other things, evidence that reveals or suggests who possessed or used the device.

## VI.     ELECTRONIC STORAGE AND FORENSIC ANALYSIS

28.     Based on my knowledge, training, and experience, I know that electronic devices can store information for long periods of time. Similarly, things that have been viewed via the Internet are typically stored for some period of time on the device. This information can sometimes be recovered with forensics tools.

29.     <u>Forensic evidence.</u>  As further described in Attachment B, this application seeks permission to locate not only electronically stored information that might serve as direct evidence of the crimes described on the warrant, but also forensic evidence that establishes how the Device was used, the purpose of its use, who used it, and when. There is probable cause to believe that this forensic electronic evidence might be on the Device because:

a)     Data on the storage medium can provide evidence of a file that was once on the storage medium but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file).

b)     Forensic evidence on a device can also indicate who has used or controlled the device. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence.

c)     A person with appropriate familiarity with how an electronic device works may, after examining this forensic evidence in its proper context, be able to draw conclusions about how electronic devices were used, the purpose of their use, who used them, and when.

d)     The process of identifying the exact electronically stored information on a storage medium that are necessary to draw an accurate conclusion is a dynamic process. Electronic evidence is not always data that can be merely reviewed by a review

team and passed along to investigators. Whether data stored on a computer is evidence may depend on other information stored on the computer and the application of knowledge about how a computer behaves. Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrant.

e)      Further, in finding evidence of how a device was used, the purpose of its use, who used it, and when, sometimes it is necessary to establish that a particular thing is not present on a storage medium.

30.    Nature of examination.  Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrant I am applying for would permit the examination of the device consistent with the warrant. The examination may require authorities to employ techniques, including but not limited to computer-assisted scans of the entire medium, that might expose many parts of the device to human inspection in order to determine whether it is evidence described by the warrant.

31.    Manner of execution.  Because this warrant seeks only permission to examine a device already in law enforcement's possession, the execution of this warrant does not involve the physical intrusion onto a premises. Consequently, I submit there is reasonable cause for the Court to authorize execution of the warrant at any time in the day or night.

*The remainder of this page intentionally left blank*

AFFIDAVIT

11

## VII.     CONCLUSION

32.     I submit that this affidavit supports probable cause for search warrants authorizing the examination of the **SUBJECT DEVICES** described in Attachment A to seek the items described in Attachment B.

Respectfully submitted,

/s/ Andrew Cunningham

Andrew Cunningham
Task Force Officer
Drug Enforcement Administration

Subscribed and sworn to me by telephone on:     July 7, 2026

The Honorable Jeremy D. Peterson
United States Magistrate Judge

*s/s Erin Cornell*
Approved as to form by AUSA ERIN CORNELL

AFFIDAVIT

12

## ATTACHMENT A

The property to be searched is

      a)     a black Samsung cell phone (**SUBJECT DEVICE #1**);

      b)     a blue Samsung cell phone (**SUBJECT DEVICE #2**); and

      c)     a white Apple iPhone (**SUBJECT DEVICE #3**).

**SUBJECT DEVICE #1**, **SUBJECT DEVICE #2**, and **SUBJECT DEVICE #3**, collectively referred to herein as "the **SUBJECT DEVICES**," were seized on June 10, 2026, at Julian BEALL's apartment, located at 1721 21st Street, Apartment 225, Sacramento, California. The **SUBJECT DEVICES** are currently located at 5770 Freeport Boulevard, Suite 200, Digital Forensics Unit, Sacramento, California, within the Eastern District of California.

This warrant authorizes the forensic examination of the **SUBJECT DEVICES** for the purpose of identifying the electronically stored information described in Attachment B.

**ATTACHMENT B**

1.    All records on the **SUBJECT DEVICES** described in Attachment A that relate to violations of 21 U.S.C. § 841(a)(1) and involve Julian BEALL beginning June 1, 2025, to the date of warrant execution, including:

    a.  lists of customers/associates and related identifying information;

    b.  types, amounts, and prices of drugs trafficked as well as dates, places, and amounts of specific transactions;

    c.  any information related to sources of drugs (including names, addresses, phone numbers, or any other identifying information);

    d.  any information recording Julian BEALL's schedule or travel;

    e.  all bank records, checks, credit card bills, account information, and other financial records;

    f.  communications including text messages or recorded voice messages saved on the **SUBJECT DEVICES**, as well as call history, stored telephone numbers, and other notes;

    g.  photographs or videos that may identify drugs, drug proceeds, items obtained with drug proceeds, co-conspirators, or locations; and

    h.  stored addresses or locations within mapping software that may identify locations recently visited.

2.    Evidence of user attribution showing who used or owned the **SUJBECT DEVICES** at the time the things described in this warrant were created, edited, or deleted, such as logs, phonebooks, saved usernames and passwords, documents, and browsing history;

As used above, the terms "records" and "information" include all of the foregoing items of evidence in whatever form and by whatever means they may have been created or stored,

including any form of computer or electronic storage (such as flash memory or other media that can store data) and any photographic form.

AO 93 (Rev. 11/13) Search and Seizure Warrant

# UNITED STATES DISTRICT COURT
### for the
Eastern District of California

| | | |
|---|---|---|
| In the Matter of the Search of | ) | |
| | ) | |
| (1) A black Samsung Cell Phone; (2) a Blue Samsung Cell Phone; and (3) a White Apple iPhone, Currently Located at 5770 Freeport Boulevard, Suite 200, Digital Forensics Unit, Sacramento, California | ) ) ) ) ) | Case No.    2:26-sw-0599 JDP |

## SEARCH AND SEIZURE WARRANT

To:      Any authorized law enforcement officer

An application by a federal law enforcement officer or an attorney for the government requests the search of the following person or property located in the _____Eastern_____ District of _____California_____
*(identify the person or describe the property to be searched and give its location)*:

**SEE ATTACHMENT A, attached hereto and incorporated by reference.**

I find that the affidavit(s), or any recorded testimony, establish probable cause to search and seize the person or property described above, and that such search will reveal *(identify the person or describe the property to be seized)*:

**SEE ATTACHMENT B, attached hereto and incorporated by reference.**

**YOU ARE COMMANDED** to execute this warrant on or before _____July 21, 2026_____ *(not to exceed 14 days)*
☐ in the daytime 6:00 a.m. to 10:00 p.m.   ☑ at any time in the day or night because good cause has been established.

Unless delayed notice is authorized below, you must give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the property was taken.

The officer executing this warrant, or an officer present during the execution of the warrant, must prepare an inventory as required by law and promptly return this warrant and inventory to: any authorized U.S. Magistrate Judge in the Eastern District of California.

☐  Pursuant to 18 U.S.C. § 3103a(b), I find that immediate notification may have an adverse result listed in 18 U.S.C. § 2705 (except for delay of trial), and authorize the officer executing this warrant to delay notice to the person who, or whose property, will be searched or seized *(check the appropriate box)*
☐  for _____ days *(not to exceed 30)*   ☐  until, the facts justifying, the later specific date of _____ .

Date and time issued:    July 7, 2026 at 2:49 p.m.                          _____
                                                                                                  *Judge's signature*

City and state:       Sacramento, California                          Jeremy D. Peterson, U.S. Magistrate Judge
                                                                                            *Printed name and title*

AO 93  (Rev. 11/13) Search and Seizure Warrant (Page 2) (modified)

| Return | | |
|---|---|---|
| Case No.: | Date and time warrant executed: | Copy of warrant and inventory left with: |

Inventory made in the presence of :

Inventory of the property taken and name of any person(s) seized:

**Certification**

I swear that this inventory is a true and detailed account of the person or property taken by me on the warrant.

_____

Subscribed, sworn to, and returned before me this date.

_____
Signature of Judge

Date

## ATTACHMENT A

The property to be searched is

a)    a black Samsung cell phone (**SUBJECT DEVICE #1**);

b)    a blue Samsung cell phone (**SUBJECT DEVICE #2**); and

c)    a white Apple iPhone (**SUBJECT DEVICE #3**).

**SUBJECT DEVICE #1**, **SUBJECT DEVICE #2**, and **SUBJECT DEVICE #3**, collectively referred to herein as "the **SUBJECT DEVICES**," were seized on June 10, 2026, at Julian BEALL's apartment, located at 1721 21st Street, Apartment 225, Sacramento, California. The **SUBJECT DEVICES** are currently located at 5770 Freeport Boulevard, Suite 200, Digital Forensics Unit, Sacramento, California, within the Eastern District of California.

This warrant authorizes the forensic examination of the **SUBJECT DEVICES** for the purpose of identifying the electronically stored information described in Attachment B.

**ATTACHMENT B**

1.      All records on the **SUBJECT DEVICES** described in Attachment A that relate to violations of 21 U.S.C. § 841(a)(1) and involve Julian BEALL beginning June 1, 2025, to the date of warrant execution, including:

    a.  lists of customers/associates and related identifying information;

    b.  types, amounts, and prices of drugs trafficked as well as dates, places, and amounts of specific transactions;

    c.  any information related to sources of drugs (including names, addresses, phone numbers, or any other identifying information);

    d.  any information recording Julian BEALL's schedule or travel;

    e.  all bank records, checks, credit card bills, account information, and other financial records;

    f.  communications including text messages or recorded voice messages saved on the **SUBJECT DEVICES**, as well as call history, stored telephone numbers, and other notes;

    g.  photographs or videos that may identify drugs, drug proceeds, items obtained with drug proceeds, co-conspirators, or locations; and

    h.  stored addresses or locations within mapping software that may identify locations recently visited.

2.      Evidence of user attribution showing who used or owned the **SUJBECT DEVICES** at the time the things described in this warrant were created, edited, or deleted, such as logs, phonebooks, saved usernames and passwords, documents, and browsing history;

As used above, the terms "records" and "information" include all of the foregoing items of evidence in whatever form and by whatever means they may have been created or stored,

including any form of computer or electronic storage (such as flash memory or other media that can store data) and any photographic form.